BLANCKE, MULFORD and ENGLISH, appellants, and ROGERS AND COMPANY, respondents.

1. B. purchased and placed in his sash and blind factory, a moulding machine and a planing machine, to be used by him in his factory. They were rested on the main floor of the building. One was bolted to the floor for greater firmness in use; the other was of sufficient weight to be steady without fastenings. B. executed a mortgage upon the real estate, including the building in which the machines were. Subsequently, he

<table>
<tr><td>26</td><td>563</td></tr>
<tr><td>53</td><td>372</td></tr>
<tr><td>53</td><td>438</td></tr>
<tr><td>26</td><td>563</td></tr>
<tr><td>55</td><td>625</td></tr>
<tr><td>26</td><td>563</td></tr>
<tr><td>56</td><td>316</td></tr>
<tr><td>56</td><td>321</td></tr>
<tr><td>26</td><td>563</td></tr>
<tr><td>57</td><td>470</td></tr>
<tr><td>26</td><td>563</td></tr>
<tr><td>59</td><td>545</td></tr>
<tr><td>64L</td><td>193</td></tr>
<tr><td>26</td><td>563</td></tr>
<tr><td>62</td><td>313</td></tr>
<tr><td>62</td><td>640</td></tr>
<tr><td>62</td><td>641</td></tr>
<tr><td>26</td><td>563</td></tr>
<tr><td>64</td><td>145</td></tr>
</table>

executed a chattel mortgage upon the machines. *Held*, that the machines were not fixtures subject to the real mortgage, but passed under the chattel mortgage.

2. To constitute such chattel a fixture, there must be actual annexation to the freehold, of a character evincive of an intent to make it a permanent accession to the freehold.

Appeal from a decree made in accordance with the opinion of the Vice-Chancellor, reported in 10 *C. E. Green* 496.

*Mr. Williamson*, for appellants.

*Mr. Coult*, for respondents.

The opinion of the court was delivered by.

KNAPP, J.

John G. Brokaw, owning lands in Elizabeth, in 1869 erected thereon a building to be used by him in the business of sash and blind making, &c. A boiler and steam engine were placed in, and firmly affixed to the factory, for supplying power, and connected shafting and pulleys, for distribution of that power, were secured to different parts of the building. For the purposes of his work, Brokaw purchased from the respondents, "C. B. Rogers & Company," a corporation engaged in the manufacture and sale of machinery, two machines, described as "a No. 1 four-sided inside moulding machine," and a "No. 4 Clipper planer and matcher," and placed them in the factory, so as to be driven by belts running over the pulleys on the shafting, to these machines. Four or five months after the machines were delivered by the respondents and placed in the factory, and while they remained there and in use, Brokaw and wife executed a mortgage on the lands upon which the factory was built, to one Samuel S. Wood, to secure the payment of a loan of $10,000. Subsequent to this, Brokaw executed a chattel mortgage on these two machines, dated May 10th, 1871, to secure payment to respondents of three promissory notes, amounting, in the

Blancke *v.* Rogers.

aggregate, to $950, given for an unpaid balance of the purchase price of the machines. The land on which the factory stood, was sold by the sheriff of Union county, under proceedings for the foreclosure of the mortgage given to Wood, and the appellants became the owners of the real estate so sold. The bill in this cause, for the foreclosure of the chattel mortgage, was filed in the Court of Chancery in May, 1873. The cause was heard before the Vice-Chancellor, on bill, answer and proofs, and he advised a decree in favor of the lien of respondents' mortgage. This appeal is from that decree, and brings up the question whether these machines, at the time the chattel mortgage was given to respondents, were personal chattels, and became subject to that mortgage, or whether they had become a part of the realty at the time of, and were conveyed by, the mortgage under which the appellants claim.

These machines, when they were delivered to the mortgagor by the respondents, were complete and entire as instruments for the performance of certain work. No adjustment was made of them to fit them, in anywise, to the place where they were put for use, nor any adaptation of the building to receive them; they gained nothing in efficiency or usefulness by being placed in this building, that they would not have in any other building having power for driving machinery; the only conditions required for their use were firm rest and support, by reason of their weight, and applied power to give them motion. They were placed in this building, upon the floor of a room, without other support. One was found to be sufficiently steady in operation, by reason of its great weight, and the means attached to it, for securing it to the floor, were not used; the other being somewhat lighter, was found unsteady in motion, and to avoid that difficulty, was partially bolted to the floor with screw-bolts; it is clearly shown in the case, that this fastening was solely for greater convenience in use of the machine.

It is not denied that such chattels may be so annexed to and incorporated into the realty as to become, through the manner of annexation and the purpose of the owner, a part

of the freehold, and when so annexed, it partakes of its qualities and is subject to its incidents. It will pass by grant, devise or descent of the lands.   If not previously severed by the owner, it cannot be mortgaged as a chattel.   If the land be mortgaged, the fixture passes to the mortgagee, and the owner may not sever it from the lands during the continuance of the mortgage, nor can he make a valid sale or mortgage of it as a chattel, as against such mortgagee.

The more liberal rule which governs between landlord and tenant, for the removal of fixtures placed by the tenant on the demised premises, during his term, for the purposes of trade, &c., cannot have application in determining this case.   It must be governed by the stricter rule existing between mortgagor and mortgagee, if a fixture at all.   And whether these machines are fixtures or not, is the real question in the cause; if fixtures, the title passed under the mortgage of the lands, and the chattel mortgage gave no lien.   The question is not of the rights to remove or have a fixture, but whether the property in question are fixtures ; whether these machines were in any proper sense stamped with the character and quality of realty by the owner of the inheritance.   And, for the determination of this question, we may, to the circumstances of the case, apply the rules which are recognized in the adjudications of our own and other states, as controlling tests.     Crane v. Brigham, 3 Stockt. 29 ; Quinby v. Manhattan Cloth and Paper Man'f'g Co., 9 C. E. Green 260 ; Teaff v. Hewitt, 1 McCook 511 ; Brearley v. Cox, 4 Zab. 287 ; Potter v. Cromwell, 40 N. Y. 287 ; Hill v. Wentworth, 28 Vt. 428 ; Capen v. Peckham, 35 Conn. 88 ; Voorhis v. McGinnis, 48 N. Y. 278, are cases wherein those rules are stated.

In Crane v. Brigham, the Chancellor says :   " As between mortgagor and mortgagee, when we have once established the facts, that a thing appertains to the real estate, is necessary for its enjoyment, and is permanently attached to the freehold, its character as a fixture is determined.   If it is placed there for the permanent improvement of the freehold, the mortgagor may not remove it."

In *Quinby* v. *Manhattan Cloth and Paper Co.*, citing from Potts, J., in *Brearley* v. *Cox*, 4 *Zab.*, the Chancellor says : "The criterion is better stated elsewhere, to be the united application of the following requisites : 1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use or purpose to which that part of the realty with which it is connected is appropriated. 3d. The intention of the party making the annexation to make a permanent accession to the freehold." In Capen *v.* Peckham, respecting a windlass set up in a slaughter-house, annexation to the freehold, adaptation of the article to the place it occupied, and its want of adaptation to other places without special preparation, served, among other tests, in determining in that case whether a fixture or not.

In the case of *Voorhis* v. *McGinnis;* Hunt, Commissioner, in delivering the opinion of the majority of the court, says : " There are several tests in the form of general principles, that will aid in the determination of whether a fixture or not : 1st. The rule is quite uniform that, to give to articles personal in their nature, the character of real estate, the annexation must be of a permanent character. 2d. Adaptation to the use of the freehold. 3d. The intention of the parties at the time of making the annexation. The three test rules so clearly stated in Teaff *v.* Hewitt, adopted in Potter *v.* Cromwell, and elsewhere in New York, approved in our Supreme Court, in Brearley *v.* Cox, and again by the Chancellor in Quinby *v.* Manhattan Co., may justly claim acceptance in this court. The cases are innumerable that hold actual physical annexation and attachment to the realty necessary to change the character of a personal chattel to that of a fixture. And such attachment must be for other purposes than merely to hold the chattel steadily in position while in use. *Murdock* v. *Gifford,* 18 *N. Y.* 28 ; *Voorhis* v. *McGinnis, supra.* The annexation must be made with the intention of a permanent accession to the freehold.

The claim to hold the machines in question, as part of the realty purchased by the appellants, must fail when brought to

the test of the foregoing rules.    They had no such attachment or physical annexation to the freehold, or anything appurtenant to the lands, as could impart to them the character of real estate ; nor is there any evidence in the case, of an intention of the parties to join them permanently to the freehold.    They stood upon the floor of the building in which they were used, without any other support, and without any manner of fastening to the floor, walls, or other part of the building, except that one being lighter than the other, was partially secured to the floor by screw bolts ; and, as to that, the evidence fully justifies the conclusion of the Vice-Chancellor, that the bolts placed in the soles of that machine were put there solely for convenience in its use, to render it more steady when in motion.    The bolts which were run between the fixed shafting and the machines, were only for the purpose of communicating with the driving power and giving motion ; their office is not, nor can they serve, to annex and fix the machines to the real estate.    It is true, that if the chattel is actually affixed to the realty, the strength and force of the union is of little consequence in determining its character as a fixture, but, to create it a fixture, there must be annexation, and the connection must be such as is consistent with and suggestive of an intent permanently to annex it to the freehold.    Manure laid upon lands may pass under a conveyance of the lands, but that is not under the law of fixtures.    *Ruckman* v. *Outwater*, 4 *Dutcher* 581.

There appears to have been no special adaptation of this machinery to the place where used, nor any preparation of the place to receive them.    They were suitable and proper to be there, if such instruments were required for their appropriate work, but equally suitable and useful elsewhere.    They were movable in the building, and were moved about at the convenience of the owner, and run from different parts of the shafting.    They were made and designed, not for this place, or any particular place ; they were constructed after fixed patterns, for all purchasers ; things in gross ; mere implements ; heavy and complicated tools.    If they ceased

to be used in this factory, they were movable without alteration, without detriment to the building, and could be used equally well in another place provided with power to drive them.

The nature of this property and its relation to the mortgaged premises, purchased by the appellants, are not such as to justify the conclusion that the mortgagor had any *intent* to annex these chattels, and make them a permanent accession to the freehold; the mortgage contains no evidence of such intent; it conveys the lands by descriptive boundaries. The only other evidence on that view of the case is the testimony of the mortgagor, and that, so far as it has weight, is against such intention.

In *Crane* v. *Brigham,* the property was a steam engine joined to a water power for driving a mill, that could not be driven without such additional power, a boiler for dyeing set in masonry, and three other boilers, and an engine, for driving another factory; all were firmly fixed to the lands, and fitted to places specially prepared for them.

*Brearley* v. *Cox* deals with the rule as between landlord and tenant, and holds, on a question of pleading, that a saw mill, steam engine and fixtures, a barn and shingle mill, may be the subject of replevin.

*Murdock* v. *Gifford,* 18 *N. Y. R.* 28, was a claim, by a judgment creditor of a mortgagor, against a mortgagee, for looms in a woolen factory, the premises mortgaged; the looms were on one floor of the factory, "fastened to the floor by means of ten screws in each loom," "merely for the purpose of keeping the said looms in their places, and in a steady position, and not otherwise, during the operation and working of the said looms. They were worked by a band carried by the fixed machinery." They could be removed without injury to themselves or the building. Ch. J. Johnson says: "The wheel or engine which furnishes the motive power, and all that part of the gearing and machinery which has special relation to the building with which it is connected, would belong to the freehold; while an independent machine like a

loom, which, if removed, still remains a loom, and can be used as such whenever it is wanted, and power can be applied to it, will still retain its character as personalty."

The case of *Potter* v. *Cromwell, supra,* where a portable grist mill, placed in a mill with other fixtures, and firmly bolted to timbers laid down for the purpose of receiving and securing it, was held a fixture, recognizes the case of Murdock *v.* Gifford, and draws the distinction between the two cases; in this case, Grover, J., dissenting, considered the mill not a fixture.

The case of *Gale* v. *Ward,* 14 *Mass.* 352 was also a claim by a creditor, against a mortgagee of a wool carding factory, for carding machines used in the factory driven by fixed power; the machines stood on the floor by their own weight, run by belts from fixed shafting; they were so large that they could be removed only by taking apart; and were so taken apart by the sheriff in removing. Parker, C. J., says: "They must be considered as personal property, because, although in some sense attached to the freehold, yet they could be easily disconnected, and were capable of being used in any other building erected for similar purposes."

The rule in this case is clearly supported in the distinctions made by the court in *Pierce* v. *George,* 108 *Mass.* 78, where the property in a machine shop is divided between a mortgagee of the realty and a mortgagee of the chattels.

So in the case of *Voorhis* v. *McGinnis,* cited on the argument; Hunt, C., after speaking of boiler engines and shafting as firmly attached to the freehold, says: "It is further found that the planing machine, fire pumps, and saw benches were worked by bands     *     *     from the engine     *     * and were complete in themselves as machines, were of equal use and value wherever they were wanted, were affixed to the building only for convenience in using, and were capable of removing without injury to themselves or the building." "There is greater doubt whether these articles come within the rule which would make them fixtures. They are less permanent in their character, the actual annexation is much

Blancke *v.* Rogers.

slighter, and their use evinces less evidence of an intended accession to the freehold. They may well be held to be chattels, and pass under the chattel mortgage." In this case, two out of five of the commissioners were in favor of holding all the property as chattels.

The machinery in question in this case is, as the Vice-Chancellor justly observes, different in nature and legal character from steam engines, boiler and shafting secured to the freehold by masonry or other substantial annexation; they might pass under a conveyance of the lands : but not so this property ; it is not real estate, nor made an accession to it. The conclusion is, that these chattels were not made a part of the realty, but retained their original character ; that they did not pass under the mortgage of the real estate from Brokaw to Wood, and are, therefore, subject to the lien of the chattel mortgage of the respondents. Decree of the Chancellor must be affirmed, with costs.

Decree unanimously affirmed.