SMYTH SALES CORPORATION, A CORPORATION, PLAIN-
TIFF-RESPONDENT, v. NORFOLK BUILDING AND LOAN
ASSOCIATION, A CORPORATION, DEFENDANT-APPEL-
LANT.

Argued October 17, 1935—Decided April 2, 1936.

For the plaintiff-respondent, *John A. Bennett.*

For the defendant-appellant, *Herr, Leiss & Herr, William
V. Azzolli* and *David Weinick.*

The opinion of the court was delivered by

CASE, J. Plaintiff sued in replevin to recover possession
of certain portions of an oil burner equipment which, in its
entirety, had been sold to the owner of the premises upon a
filed conditional sale contract. The trial judge, sitting with-
out a jury upon an agreed state of facts, found for the plain-
tiff. The Supreme Court affirmed. Defendant appeals. The

suit involves identical facts and points of law with regard to the properties known respectively as 155-157 Montclair avenue and 159-161 Montclair avenue, in the city of Newark. The discussion may be applied to either property.

La Ferra, as owner, was building a four-family house with a single heating plant. On August 25th, 1930, he entered into a written contract with Smyth Sales Corporation whereby the latter undertook to install an oil burner, tank and the additional equipment incident thereto, including a pump, the same to be and remain the personal property of the seller, notwithstanding the manner in which the property might be attached to the premises, until the entire purchase price should have been paid. The contract was filed in the register's office of the county of Essex and entered in the conditional sales book on August 28th, 1930. Actual installation was made on September 30th, 1930. The tank was buried three feet under ground. It was connected with the pump and the burner by piping (a part of the equipment) which passed through the foundation wall of the house, was otherwise attached and also, for approximately twenty feet, was so encased that its removal would require the breaking of the concrete cellar floor. Plaintiff's suit is directed against the burner, the tank and the pump. If any of such articles are removed, no heat can be generated unless other appliances are installed in their stead.

On September 9th, 1930, La Ferra executed a mortgage, recorded October 3d, 1930, to defendant Norfolk Building and Loan Association in the amount of $16,000 covering the premises. On April 24th, 1931, one Scrocco obtained a judgment against La Ferra on mechanic's lien and defendant purchased the premises at the execution sale held thereunder. Defendant thus acquired and still holds record title. No reason for reversal is made to depend upon the preservation of the mortgage interest, and we shall assume that the mortgage merged with the title on the acquisition of the equity of redemption.

Defendant's claim that the mechanic's lien attached before the filing of the condition sale contract falls for lack of com-

petent proof. Its position is therefore that of a purchaser whose acquisition of the realty was subsequent both to the filing of the conditional sale agreement and to the installation of the equipment but who did not assent to a reservation of title in the chattels.

The case turns upon the construction to be given section 7 of the Uniform Conditional Sales act. *Pamph. L.* 1919, *ch.* 210; 2 *Cum. Supp. Comp. Stat., p.* 3130. The section was printed in *Domestic Electric Co., Inc.,* v. *Mezzaluna,* 109 *N. J. L.* 574, and elsewhere in the reported cases, and need not be here repeated at length. For present discussion the statutory provisions may be thus restated : An attempted reservation of title to goods so affixed to the realty that they are *not* severable without material injury to the freehold is void as against *any person* who has not expressly assented to the reservation ; and an attempted reservation of title to goods so affixed to the realty that they *are* severable without material injury to the freehold is void (a) as against any *subsequent purchaser* of the realty for value and without notice unless there be the statutory filing *before* his purchase and (b) as against the then owner unless there be the statutory filing *before the goods are affixed.*

In determining whether the removal of the replevined goods would result in material injury to the freehold we do not weigh the destructive effect of the breaking up of the concrete floor of the cellar incident to the removal of an essential part of the equipment because we reach our conclusion on broader grounds, but we note that the physical affixation of the equipment to the realty here clearly appears. Many years ago our courts stated a principle that has more recently become known as the institution doctrine. In *Feder* v. *Van Winkle,* 53 *N. J. Eq.* 370, Mr. Justice Van Syckel said : "The various appliances were actually annexed to the freehold. They were fitted for and applied to the use to which the real estate was appropriated, all being designed for and necessary to the prosecution of a common purpose. Thus the machinery and land became unified and incorporated together as a whole." Upon the same reasoning the Supreme

Court in *Temple Co.* v. *Penn Mutual Life Insurance Co.,* 69 *N. J. L.* 36, held that enumerated articles, some of them but slightly attached to the building, were part of the realty because they were actually annexed or fitted for and necessary for the use to which the real estate was appropriated, "all being necessary to the prosecution of a common purpose (*viz.,* the use of the premises as a theatre) and adapted to permanent use as part of the structure." Our late Chief Justice Gummere, in writing the opinion for this court in *Knickerbocker Trust Co.* v. *Penn Cordage Co.,* 66 *N. J. Eq.* 305, said:

"The rule laid down in Feder *v.* Van Winkle, and followed in Temple Co. *v.* Penn Mutual Life Insurance Co., states the true principle to be applied in the determination of the question when it is presented. Whenever chattels have been placed in, and annexed to, a building by their owner as a part of the means by which to carry out the purposes for which the building was erected, or to which it has been adapted, and with the intention of permanently increasing its value for the use to which it is devoted, they become, as between the owner and his mortgagee, fixtures and as much a part of the realty as the building itself. And this is true notwithstanding that such chattels may be severed from, and taken out of, the building in which they are located without doing any injury either to them or to it and advantageously used elsewhere, and notwithstanding that the building itself may thereafter readily be devoted to a use entirely different from that which was contemplated when the annexation was made."

Those adjudications were between owner and mortgagee, but they enunciate a principle of wider application.

Let us consider the property presently in litigation. Advancing needs of society and marked refinements in living and working conditions and in the design and function of buildings to meet those conditions have made necessary a development of the conception of what really constitutes a building as contrasted with furnishings or severable fixtures—speaking broadly, of what is land as contrasted with chattels. It is logical that the legal conception of what we

refer to, with varying shades of meaning, as "building," or "realty," or "freehold" should keep pace with actual changes in the substance which the conception represents. Particularly is this so with regard to houses, and more particularly apartment houses, and with respect to certain living facilities which must be provided by the owner as, essentially, parts of the structure. Formerly tenants took their own stoves to and from the leased premises; so, too, oil lamps, ice boxes, bathing vessels, and the like. Those ways are now largely outmoded, particularly in the cities; not only outmoded but to a degree eliminated, necessarily so in many of the habitations provided for the multiple housing of tenants. In this climate conditions of habitation must include the means of heat in the winter and of refrigeration in the summer. In our case the building is a dwelling, housing four families, built for year-round occupancy and heated by a system wherein the heat is generated in the cellar by a single oil burning equipment. The structure cannot function for the purpose, and the only purpose, for which it was built unless it has a heating system. If the equipment or any part thereof necessary to the generation of heat is taken out, it must be replaced. It is a part of the house. It is entirely separate and apart from furniture or furnishings. It is something that must be in and of the building instituted as an apartment dwelling house, before the structure so instituted can, as a *structure,* properly function. The removal of it would be, *pro tanto,* a disintegration of the structure. With as little physical disturbance doors could be lifted from their hinges, windows from their frames, radiators from their pipes, chandeliers and brackets from the ceilings and walls, bathtubs from their settings and numerous other accessories, personalty in their manufacture but by attachment and function part of the completed house, could be taken out. If dwelling houses consisted simply of floors and roof with supporting walls masoned into the ground, the extent of physical disruption incident to the severance of an object would perhaps furnish a satisfactory and workable rule as to whether that object could be removed without injury to the freehold. But that type of construction does not prevail

and that test is wholly inadequate. When a chattel which, clearly, is permanently essential to the completeness of a structure, having regard to the character of that structure and the functioning of it in the use for which it was obviously designed, is actually, purposely and lawfully affixed to and into the structure, it becomes, in our opinion, a part of the realty; and if the severance of it will prevent the structure from being used for the purposes for which it was erected or for which it has been adapted, then the article is not severable without material injury to the freehold. By that standard the articles sought by plaintiff are not severable without material injury to the freehold. The willingness on the part of the plaintiff to abandon parts of the equipment does not alter the relationship which the equipment, as a whole, bears to the remaining parts of the structure. In such a situation the degree of affixation is less important than the indispensability of that which is affixed. That principle has been thoroughly established in our more recent cases. *Domestic Electric Co., Inc.,* v. *Mezzaluna, supra; MacLeod* v. *Walter J. Satterthwaite, Inc.,* 109 *N. J. Eq.* 414; *affirmed,* 113 *Id.* 238; *Russ Distributing Corp.* v. *Lichtman,* 111 *N. J. L.* 21; *Lumpkin* v. *Holland Furnace Co., Inc.,* 118 *N. J. Eq.* 313; *Fidelity B. & L. Assn.* v. *Elizabeth Avenue Holding Co.,* 119 *Id.* 11.

In *General Motors Acceptance Corp.* v. *Capital Associates, Inc.,* 110 *N. J. L.* 61, we sustained the Supreme Court (108 *Id.* 421) in finding that the recording of the conditional sale contract was not sufficiently informing to reserve title in the conditional seller against a subsequent purchaser of the realty. The bare statement of fact in the Supreme Court opinion that the equipment sued for was severable without material injury to the freehold does not present an arguable precedent in the instant appeal. *Layne New York Co., Inc.,* v. *President Hotel Co.,* 111 *Id.* 338, follows *Domestic Electric Co., Inc.,* v. *Mezzaluna, supra.* *Pflieger* v. *Holland Furnace Co.,* 114 *Id.* 43, turned upon the fact that the conditional sale contract was made long before but not recorded until after the filing of the notice of *lis pendens* in the foreclosure suit whereby any interest of either the buyer or seller under the conditional

sale contract was cut off; for this reason and because of other distinguishable facts it is not, in any implication *contra,* a precedent on our present issue. To the extent that *Vogel Co.* v. *295 Halsey Street Co.,* 109 *Id.* 83, and *Independent Aetna Sprinkler, &c.,* v. *Morris,* 114 *Id.* 23, are in conflict herewith they are overruled.

The remaining question is whether the assent given by the owner at the time of the installation is binding upon the subsequent purchaser. We think that it is not. A literal construction of the statute requires a negative answer; an attempted reservation is, by its terms, void as against any person who has not expressly assented. A study of the section for the legislative intent leads to the same result. Looking *supra* at our resume of the statute, it is clear that a subsequent purchaser does not step into the shoes of his grantor under (a) and (b), and we find no indication of a legislative intent that he shall do so under the earlier part of the section. It is also clear, we think, that the first part of the section was intended to perpetuate the common law doctrine that there are limits to the powers of the buyer and seller with respect to reservation of title to fixtures conditionally sold. Under our interpretation a purchaser of real estate is not obliged to search the record of conditional sale contracts with respect to any article by its nature and purpose adapted to permanent incorporation into a building and actually and intentionally so affixed to the realty that it cannot be severed without doing material injury to the freehold. Respondent sold the equipment for the uses, and installed it in the manner, already detailed. The reasoning of this opinion and of the opinions upon which it rests is that the equipment, because of its nature and indispensability, became a part of the structure when affixed to it under the named circumstances. It is not reasonable to suppose that either respondent or La Ferra intended otherwise than that, subject to payment of the sale price, the annexation was to form a permanent accession to the building. We think that in view of the nature and effect of the intentional affixation the attempted reservation of title cannot stand against a subsequent realty purchaser who has not assented thereto.

It is clear from the stipulated facts that the articles which respondent sought to recover are indispensable parts of the heating system which is itself an essential part of a building designed for use as an apartment house and that the articles were lawfully and intentionally affixed for that purpose. It follows that the heating system, comprehensive of the litigated parts, became incorporated with the realty, is not severable without material injury to the freehold and that therefore, by the terms of the statute, the attempted reservation of title was void as against the appellant who did not assent to the reservation.

The judgment below will be reversed.

PERSKIE, J. (Dissenting.) Mr. Justice Heher, Judge Wells and I, vote to affirm the judgment below because we do not subscribe to the institutional doctrine upon which the majority opinion is made to rest.

The Uniform Conditional Sales act provides, *inter alia,* that, "this act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." *Pamph. L.* 1919, *ch.* 210, *pp.* 461, 470, § 30; 2 *Cum. Supp. Comp. Stat.* 1911-1924, 182-116, *p.* 3136. Notwithstanding this clear legislative policy and mandate, the interpretation adopted by the majority is contrary to the general and uniform interpretation given it by (a) the commissioners who drafted the act (*Crown* v. *Regna Construction Co.,* 104 *N. J. Eq.* 469, 475, 476; *affirmed,* 106 *Id.* 192; *Bank of America National Association* v. *LaReine Hotel Corp.,* 108 *Id.* 567, 577, 578); (b) courts which have adopted the act; (c) legal writers on the subject. See cases collected in 83 *U. of P. Law Review* (1935), 916; 48 *Harvard Law Review* (1935), 857, 858.

We think that the effect of the construction and interpretation given to the act is tantamount to judicial legislation.

*For affirmance*—HEHER, PERSKIE, WELLS, JJ. 3.

*For reversal*—THE CHANCELLOR, LLOYD, CASE, DONGES, HETFIELD, DEAR, WOLFSKEIL, RAFFERTY, JJ. 8.