70 N.J. Super. 313 (1961)
175 A.2d 438
WADIE M. FAHMIE, PLAINTIFF-RESPONDENT,
v.
HARRY NYMAN AND GLADYS NYMAN AND FRANK LUPO, TRADING AS LUPO'S FOOD MARKET, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1961.
Decided November 24, 1961.
*315 Before Judges GOLDMANN, FOLEY and KILKENNY.
Mr. Frederick J. Fox argued the cause for appellants (Messrs. Timney, Fox and Blaney, attorneys; Mr. Leslie W. Gallt, on the brief).
Mr. Anson Rauschberg argued the cause for respondent (Messrs. Liebman & Rauschberg, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiff brought a replevin action in the Law Division for possession of a number of items of equipment used in the operation of a retail butcher business. The trial court determined that certain of the articles were personalty, and gave judgment for plaintiff thereon. Others were found to be fixtures, title to which passed with the realty. As to these, judgment was entered in favor of the defendants. Defendants appeal; plaintiff does not cross-appeal.
The essential facts are not in dispute.
One, Guy Matthies, now deceased, was the owner of a two-story building at 33 Ridge Road, Lyndhurst, N.J. For some 25 years he operated a butcher shop on the first floor, the second floor being used for residence purposes. The building is one of a row; all are similar in size and general appearance; on the first floor of each, small neighborhood retail businesses are conducted.
The items in question were originally acquired by Matthies in 1950 under a conditional bill of sale. In 1952 Matthies obtained a loan of $7,500 from the Rutherford National Bank and gave a chattel mortgage on the items as security. The loan was paid off in August 1955. In October 1953 *316 Matthies gave a first mortgage on the realty to Pulaski Savings and Loan Association in the approximate amount of $11,000. In November 1958, he and Eileen Matthies, whom he had meantime married, gave a second mortgage on the realty to defendants Harry and Gladys Nyman for approximately $13,000. In December 1958 Pulaski foreclosed its mortgage. The property was bought in by Harry Nyman at the Sheriff's sale on May 18, 1959.
On May 8, 1959 plaintiff purchased the items in question from Matthies for $1,150, and in June 1959 he made a formal demand for possession of them. The demand was refused, and the present action followed. Frank Lupo was joined, as lessee of Nyman, in actual possession of the equipment.
The articles at issue are listed below. We note briefly in parentheses the degree of the annexation (or lack thereof) of each to the freehold, and the effect of the removal of them upon the physical appearance and condition of the property, all as stipulated by counsel on the oral argument.
2 sections-29' gondolas (rests on floor surrounded by Kentile, removal would leave untiled area)
1 12' three-tier shelving (removable without damage)
1 U-shaped checkout booth (removable without damage)
9 refrigerator compressors (removable without damage)
1 Jim Vaughan electric saw (bolted to floor but removable)
2 walk-in butcher refrigerators (can be dismantled and removed)
2 Tyler display meat cases (portable)
33' self-service display case (rests on floor surrounded by Kentile, removal would leave untiled area)
1 3-decker dairy case (rests on floor surrounded by Kentile, removal would leave untiled area)
1 Tyler frozen food display case (rests on floor surrounded by Kentile, removal would leave untiled area)
1 coffee grinder (portable)
2 meat blocks (portable)
1 meat table (portable)
1 package scale  computing (portable)
1 12' four-tier shelving (removable without damage)
The classic determinants by which a fixture is adjudged were laid down in the leading case of Teaff v. Hewitt, 1 *317 Ohio St. 511, 530 (1853), wherein it was held that a movable chattel loses its character as personalty and becomes a fixture passing with the realty when it is (1) actually affixed to the realty, or something appurtenant thereto, (2) appropriated to the use or purpose of that part of the realty with which it is annexed, and (3) the party making the annexation intends a permanent accession to the freehold  this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation was made. See Blancke v. Rogers, 26 N.J. Eq. 563, 567 (E. & A. 1875). See also 1 Thompson, Real Property, § 162, p. 233 (1939); Brown, Personal Property, § 137, p. 628 (1936).
While the enumerated elements of a "fixture" are stated correlatively, the modern view is that "intention" is the dominant factor, and thus is deemed to be the safest criterion for determination of the character of the chattel. 1 Thompson, supra, § 163, p. 239. The controlling intention is that deduced by the law from the proved facts and circumstances, including the relation, conduct and language of the parties, as distinguished from the unrevealed, secret intention of the annexor. 1 Thompson, supra, § 164, p. 240.
Upon the facts here presented we agree with the holding of Judge Yancey that the chattels in question were not permanently affixed to the realty. As we have already observed, many of them were portable, or unattached and removable without substantial damage to the building. The remainder were held in place by bolts or screws, and were readily detachable. However, with respect to the latter chattels, literally "affixed" to the realty, the strength and force of the union is of little consequence in determining their character as fixtures, since, to create a fixture there must be "annexation, and the connection must be such as is consistent with and suggestive of an intent permanently to annex it to the freehold." Blancke v. Rogers, supra, 26 N.J. Eq., at page 568. (Emphasis added)
*318 The simple mode of attachment of the shelving, the bolting of the saw to prevent mobility, and the electric wiring necessary to the use of the appliances, of themselves do not indicate that Matthies intended to permanently annex them to the building. Nor does the fact that he tiled the floor around the standing display and dairy cases, and the gondolas, evince an intent that they should be deemed permanently annexed thereto. Moreover, as noted, there was no evidence that removal would cause any material physical damage to the building.
Defendants do not seriously contend otherwise but argue that under the "institutional doctrine," so-called, all of the disputed equipment once installed became a part of the realty regardless of what Matthies specifically intended.
In Smyth Sales Corp. v. Norfolk B. & L. Assn., 116 N.J.L. 293, 298 (E. & A. 1935), a replevin action by plaintiff, conditional sales vendor, for possession of an oil burner tank and pump installed in a 4-family apartment house, the court defined the institutional doctrine as follows:
"When a chattel which, clearly, is permanently essential to the completeness of a structure, having regard to the character of that structure and the functioning of it in the use for which it was obviously designed, is actually, purposely and lawfully affixed to and into the structure, it becomes, * * * a part of the realty; and if the severance of it will prevent the structure from being used for the purposes for which it was erected or for which it has been adapted, then the article is not severable without material injury to the freehold."
The institutional doctrine when analyzed is not an exception to the general rule defining fixtures, but rather, stands as a guide to the appraisal of the crucial element of intention in particular circumstances. Basically, the applicability of the rule depends upon the presence of proof in the individual case which impels the conclusion that the chattels in question are permanently essential to the completeness of the structure or the use to which the structure is put. This established, mode of annexation fades in significance, adaptability *319 inheres in the proofs, and the intention of permanent accession to the freehold is inferred.
In the cases in which the doctrine has been applied, the essentiality of the chattels to the use for which the building was designed or used is strikingly clear. In Feder v. Van Winkle, 53 N.J. Eq. 370 (E. & A. 1895), the doctrine was invoked where heavy machines, some fifty in number, many of them weighing from 2,000 to 6,000 lbs. were fastened, variously, to timbers laid on the ground, flooring, concrete subfoundations, beams and rafters, by bolts, iron pipes, and lag screws. This machinery was the operating equipment of the Riverside Bridge and Iron Works, a manufacturer of structural and bridge iron. The plant in which the machinery was housed in six connected buildings, was erected on two acres of land.
In Temple Co. v. Penn Mutual Life Ins. Co., 69 N.J.L. 36, 38 (Sup. Ct. 1903), the court held that the seats, dynamos and lighting equipment of a theatre were fixtures, stating that:
"The building was erected and used as a theatre, and whatever was incorporated with the building to fit it for use as a theatre became part of the realty."
In Knickerbocker Trust Co. v. Penn Cordage Co., 66 N.J. Eq. 305 (E. & A. 1903), machinery and appliances contained in the numerous buildings of a manufacturing plant, and used in fashioning of the manufacturer's product, were involved. There, the court citing Feder v. Van Winkle, supra, and Temple Co. v. Penn Mutual Life Ins. Co., supra, said that while earlier cases (presumably those of which Blancke, supra, is typical) were rested largely upon the method adopted in making annexation, little consideration had been given in them to the relation which the chattels bore to the buildings in which they were located. 66 N.J. Eq., at pages 308-309. And the court, approving Feder and Temple, held that whenever chattels have been placed in, and annexed to, a building by the owner, to carry *320 out the purposes for which the building was erected, or to which it has been adapted, with the intention of permanently increasing its value for the use to which it is devoted, they become, as between the owner and his mortgagee, fixtures, and as much a part of the realty as the building itself.
In a somewhat different context our courts in interpreting the Uniform Conditional Sales Law, R.S. 46:32-1 et seq. have adopted the institutional doctrine. See Domestic Electric Co. v. Mezzaluna, 109 N.J.L. 574 (E. & A. 1932) (refrigerators in an apartment house); MacLeod v. Walter Satterthwait, Inc., 109 N.J. Eq. 414 (Ch. 1932), affirmed 113 N.J. Eq. 238 (E. & A. 1933) (refrigerators in apartment house); Russ Distributing Corp. v. Lichtman, 111 N.J.L. 21 (E. & A. 1933) (refrigerators in apartment house).
In the most recent discussion of the institutional doctrine this court in Uttinger v. Koopman, 46 N.J. Super. 443 (App. Div. 1957), reiterated the rule set forth in Smyth, supra, and concluded that "two broilers, three ranges and two shelves" installed in a property used for the purposes of a substantial restaurant business of long duration, were fixtures and a part of the realty.
We are in accord with these holdings. Yet we think that the intention of the accessor in these cases, deduced from the nature of the buildings, the use to which they were put, and the essentiality of the installed chattels to such use, cannot be legitimately inferred in the case at bar.
In all of the cited cases the buildings and the chattels became so unified in furtherance of dedicated purposes and uses at the time the chattels were installed, that subsequent removal of them would have effected material damage to the buildings themselves, or to the purposes and uses to which they were dedicated.
The same can scarcely be said of a neighborhood small-scale butcher shop, adjoined on the one side by a small bakery, and on the other by a small hardware store. The modest businesses conducted in any of the three stores could *321 have readily been transferred to and carried on in either of the other two. If the chattels at issue were removed from the butcher shop the empty store would have been entirely suitable to the operation of any number of retail business enterprises. To classify such a building or a business as an "institution" is more flattering to its owner, than just.
We conclude, therefore, that the institutional doctrine has no application to the case sub judice. Consequently, the character of the chattels  personalty vis-a-vis fixtures  must be determined under the general rules laid down in Blancke v. Rogers, supra.
As we have already noted, none of the items of equipment was so affixed to the building as to give rise to an inference that permanent annexation was intended. Additionally, the conduct of Matthies and the first and second mortgagees, in relation to the chattels strongly indicates that at all times they were regarded as personalty. Matthies purchased them under a conditional sales agreement; subsequently he pledged them by chattel mortgage, as security for a loan, at a time when his realty was unencumbered. Thereafter, his ownership of the realty was subjected to two mortgages, in neither of which were the chattels specifically included.
Considering the situation of Matthies and the purpose and use for which the chattels were installed in the butcher shop, we are satisfied that it was not his intention to permanently annex them to the freehold.
Accordingly the judgment is affirmed.