In the Matter of **PARK CORRUGATED BOX CORP., Bankrupt.**

**No. B. 134-65.**

United States District Court
D. New Jersey.

Jan. 6, 1966.

Stryker, Tams & Dill, by John C. Lifland, Newark, N. J., for petitioner.

Cole, Berman & Garth, by Bernard L. Belsky, Paterson, N. J., for respondent.

AUGELLI, District Judge:

This matter is before the Court on petition of Manufacturers Leasing Corporation (Manufacturers) for review of an order of the Referee in Bankruptcy (Referee), made on March 25, 1965, which denied Manufacturers' petition for reclamation of a certain machine from the Bankrupt herein, Park Corrugated Box Corp. (Park).

On February 8, 1965 Park filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. Manufacturers was listed in Park's schedules as a security-holding creditor in the amount of $34,952.60. On March 8, Manufacturers filed its petition to reclaim from Park the machine above mentioned, which was

used in the manufacture of corrugated boxes, and known as a "Hooper Combined Printer Slotter, Model WSG2P–200–E, size 50 x 103½ inches". On that date the Referee signed an order directed to James J. Murner, Jr., Receiver for Park, to show cause why that relief should not be granted.

On March 18, the Referee held a hearing on said order to show cause, and denied the petition for reclamation on the ground that the security agreement covering the machine was not properly filed with the Secretary of State, and that therefore Manufacturers was not a secured creditor entitled to reclamation. An order to this effect was entered on March 25, 1965. In the meantime, also on March 18, Park was adjudicated a bankrupt, and the Receiver, Murner, was thereafter appointed Trustee.

The Referee filed his opinion in this matter on June 14, 1965, and Manufacturers' petition for review was filed on June 28. The following are the facts disclosed by the record in this case.

On September 4, 1963, Manufacturers and Park entered into a "Conditional Sale and Security Agreement", whereby Park purchased the subject machine from Manufacturers for the sum of $47,405.00. The agreement stated that Manufacturers was to have a purchase money security interest in the collateral to secure the balance due, that Manufacturers was to have all the rights of a secured party under applicable state law, and that Manufacturers was to retain title to the collateral until the balance was paid in full.

The agreement between Manufacturers and Park was filed twice with the Register of Deeds of Passaic County, on September 10, 1963 and again on October 10, 1963. It had not been filed with the Secretary of State in Trenton, New Jersey.

Under the Uniform Commercial Code as adopted in New Jersey, N.J.S.A. 12A:9–401(1) provides that:

"The proper place to file in order to perfect a security interest is as follows:

(a) * * * (not applicable);

(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) In all other cases, in the office of the Secretary of State."

Manufacturers contends that the machine was a fixture, that under N.J.S.A. 12A:9–401(1) (b), the agreement was properly filed in the County Register's Office, and that therefore Manufacturers has a perfected security interest in the machine prior to the rights of the Trustee. The Trustee argues, as the Referee has found, that the machine was not a fixture, that under N.J.S.A. 12A:9–401(1) (c), the agreement should have been filed in the office of the Secretary of State, and that therefore Manufacturers' security interest was not perfected. The issue in this case is thus simply whether the machine in question is or is not a fixture within the meaning of N.J.S.A. 12A:9–401(1) (b).

N.J.S.A. 12A:9–313(1) provides that the law of New Jersey determines whether and when goods become fixtures. The law in New Jersey concerning fixtures has most recently been reviewed in the case of Fahmie v. Nyman, 70 N.J.Super. 313, 175 A.2d 438 (App.Div.1961). In that case, the court discussed the two tests used in New Jersey to determine whether and when a chattel becomes a fixture. They are known as the "traditional test" and the "institutional doctrine".

■ Under the "traditional test", intention is the dominant factor. A chattel becomes a fixture when the party making the annexation intends a permanent accession to the freehold. This intention may be "inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation was made". 70 N.J. Super. at 317, 175 A.2d at 441.

The testimony before the Referee at the reclamation proceeding shows that there was no intention to annex the machine permanently to the freehold. A witness for Manufacturers testified that although the machine was annexed to the building, it could easily be removed in one hour without material physical damage to the building. He described the machine as being about 125 inches wide by 8 feet long, weighing 45,000 pounds, anchored by two or three leg screws on each side, and connected to a 220 volt electric line. This same witness testified that a rigger could remove the machine quite easily by merely unbolting the screws, disconnecting the 220 volt line, jacking it up, putting it on rollers and taking it out. Park's president testified that the machine had been moved two or three times to other sections of the plant by employees of Park during the time it was located in the plant.

■ Under the "institutional doctrine", the test is whether the chattel is permanently essential to the completeness of the structure or its use. A chattel is a fixture if its severance from the structure would cause material damage to the structure or "prevent the structure from being used for the purposes for which it was erected or for which it has been adapted." Smyth Sales Corp. v. Norfolk B. & L. Ass'n, 116 N.J.L. 293, 298, 184 A. 204, 206, 111 A.L.R. 357 (E. & A.1935). Thus, in Temple Co. v. Penn. Mutual Life Ins. Co., 69 N.J.L. 36, 38, 54 A. 295 (Sup.Ct.1903), the Court stated, in holding lighting equipment and seats to be fixtures under the "institutional doctrine", that "[t]he building was erected and used as a theatre, and whatever was incorporated with the building to fit it for use as a theatre became part of the realty."

Again, the testimony before the Referee shows that the machine in question was not essential to the structure or its use, and that the severance of the machine would not prevent the structure from being used for the purposes for which it was erected or could be adapted. There was testimony that after the ma-

chine was removed from the building, the structure could be used for industrial uses generally; also testimony that different prior uses had been made of the structure. Thus, both before the machine was installed and after it was removed, the structure was and could be used for any number of different purposes. Cf. Fahmie v. Nyman, supra. Finally, there was attached to the agreement between the parties a statement by Manufacturers that the machine is "to be affixed to real property * * * by removable screw joints or otherwise, so as to be severable from the realty without material injury to the freehold."

 While the machine in question does not appear to be a fixture under either the "traditional test" or the "institutional doctrine", Manufacturers makes the further contention that the machine is a "trade fixture" under New Jersey law, and therefore a "fixture" pursuant to N.J.S.A. 12A:9–401(1) (b). However, the term "trade fixture" is generally applied only in landlord and tenant cases to describe a chattel which the tenant has installed on the landlord's premises for trade purposes, and which the tenant is allowed to remove if it can be severed without material injury to the freehold. Otherwise, the chattel would be a fixture and belong to the landlord. Crane v. Brigham, 11 N.J.Eq. 29 (Ch.1855); Handler v. Horns, 2 N.J. 18, 65 A.2d 523 (1949). Thus, a "fixture" is just the opposite of a "trade fixture" under landlord and tenant law; the latter can be removed by the tenant without material injury to the freehold. A "trade fixture" is not a fixture within the meaning of N.J.S.A. 12A:9–401(1) (b).

 Since the machine here involved was not a fixture under N.J.S.A. 12A:9–401(1) (b), and the agreement between Manufacturers and Park was not filed in the office of the Secretary of State pursuant to N.J.S.A. 12A:9–401(1) (c), Manufacturers' security interest was not perfected prior to the filing of the Chapter XI petition. Therefore the Trustee's rights to the machine take priority over the rights of Manufacturers.

Under the circumstances, and for the reasons so well stated in the Referee's opinion, the order denying reclamation in this case will be affirmed. Counsel for the Trustee, on notice to counsel for Manufacturers, will please submit an appropriate order.