**In re David F. HINSON, Debtor.**

**Bankruptcy No. B–87–00156–C–13.**

United States Bankruptcy Court, M.D. North Carolina.

Aug. 10, 1987.

Steven Grossman, Forbis & Grossman, Kannapolis, N.C., for Blazer Financial.

Kathryn L. Bringle, Winston-Salem, N.C., standing trustee.

## MEMORANDUM OPINION

JERRY G. TART, Bankruptcy Judge.

This matter came on for hearing on April 16, 1987, for confirmation of the debtor's Chapter 13 plan. Blazer Financial (hereinafter "Blazer") objected to confirmation of the debtor's plan because Blazer's claim was classified as an unsecured claim. Blazer withdrew its objection to confirmation but retained its objection to classification as an unsecured claim. The debtor's plan was confirmed on April 16, 1987. On June 29, 1987, the Court heard arguments on Blazer's objection to classification of its claim as unsecured.

## FACTS

On October 21, 1986, the debtor, David F. Hinson, signed a consumer credit installment sales contract to purchase windows and gutters. The agreement (printed form) provided that the purchaser granted a purchase money security interest in the property to be financed and that the property was to be considered personal property. The filled in portions of the agreement labeled "Description of Articles Sold or Services Rendered" reads "Put in 11 replacement windows, put up gutters and do trim work...." The same day the note and security agreement were assigned to Blazer. Subsequently, on January 27, 1987, Mr. Hinson filed Chapter 13. Blazer filed a proof of claim for $5,126.89 asserting a secured status. The Standing Trustee denied the creditor's secured status for failure to perfect through a fixture filing. Initially, Blazer objected to confirmation of the plan but withdrew this objection while retaining an objection to Blazer's classification as an unsecured creditor. Blazer submitted a memorandum and the Court heard argument on June 29, 1987.

Blazer argued that the security interest in the windows and gutters was perfected as a purchase money security interest. Blazer asserted that the windows and gutters were consumer goods and relied on the automatic perfection of a purchase money security interest in consumer goods. N.C. G.S. section 25–9–302(1)(d) provides in pertinent part that "a financing statement must be filed to perfect all security interests except the following; ... (d) a purchase money security interest in consumer goods."

In addition, Blazer contended that the automatic perfection for consumer goods should continue even after the goods became attached to the real estate. Blazer relied on N.C.G.S. section 25–9–313(4)(d) which provides priority for "a perfected security interest in fixtures ... over the conflicting interest of an encumbrancer ... of the real estate where ... the conflicting interest is a lien on the real estate obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this article." Blazer contended that "any method" should include the automatic perfection for consumer goods of a purchase money security interest.

The Standing Trustee sought to avoid the security interest through section 544(a)(1) as a hypothetical lien creditor. The Trustee argued that the windows and gutters were fixtures and Blazer had not perfected its security interest with a fixture filing. Therefore, Blazer did not have a perfected security interest and the Trustee could

avoid the security interest and treat the claim as an unsecured claim.

## ISSUES

The threshold issue is whether the windows and gutters financed by Blazer were consumer goods or fixtures. The second issue is whether a security interest was properly perfected as of petition date against a subsequent judgment lien creditor such that Blazer is entitled to a secured claim.

## DISCUSSION

■ It seems obvious to the Court that windows and gutters attached or incorporated into a house are fixtures and not consumer goods. Consumer goods are defined by North Carolina Statute as goods "used or bought for use primarily for personal, family, or household purposes." N.C.G.S. section 25–9–109(1). Goods become 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law. N.C.G.S. section 25–9–313(1)(a).

Thus, to determine whether the windows and gutters are fixtures, the Court must look to North Carolina law to determine whether an interest would arise under real estate law. A fixture is defined as "a thing which was originally personal property but which has been attached to land in a more or less permanent manner and under such circumstances that it is considered in law to have become a part of the real property and thus belongs to the owner of the land to which it is attached." J. Webster, *Real Estate Law in North Carolina*, Section 11 at 14 (1971). The general rule is the controlling test for determining whether a chattel is real or personal property is the intention of the parties with regard to the annexation. *Little v. National Services Industries, Inc.*, 79 N.C.App. 688, 692–693, 340 S.E.2d 510, 513 (1986). Words, conduct or express or implied agreements can be evidence of subjective intent between parties who are connected to the transaction. *Id.*, citing 1 *Thompson on Real Property*, 1980 Replacement, Section 56 (1980). When rights of a third party are involved, the intention is considered in terms of what would be "reasonably apparent to such third person as manifested by physical facts and outward appearances." *Id.* When the owner of the real property also owns the chattel and annexation of the chattel is appropriate to the usual use of the real estate, then the apparent intent of the parties is that the chattel should be part of the real property. *Little*, 340 S.E.2d at 513–514. Furthermore, the usual manner of annexation as permanent additions is evidence that the parties intended the goods to become part of the real estate. *Id.* at 514.

It seems obvious that the parties intended for the windows and gutters to become a permanent part of the real estate. The only logical use for windows and gutters to the consuming public is as an addition to a building. In this case, the owner of the property purchased the goods for incorporation into his residence. The contract indicates that Mr. Hinson was purchasing "installed" windows and gutters. The "description of articles sold or services rendered" states "Put in 11 replacement windows, put up gutters and do trim work." While the contract provided that the goods remained personal property, and such an agreement may be valid between the parties to the contract, it is not binding when third parties become involved. When third party rights are involved, the apparent intent of the parties to an outsider are determinative. *Little*, 340 S.E.2d at 513. In the case at bar, the Standing Trustee is an outside third party in the position of the hypothetical judgment lien creditor. Therefore, the Court holds that the windows and gutters were fixtures as of petition date.

■ Having determined the items are fixtures, it becomes necessary to determine whether Blazer's security interest was properly perfected against a subsequent judgment lien creditor. Blazer argues that its security interest should remain perfected even though the goods have become fixtures because the Uniform Commercial Code provides a special rule for fixtures at N.C.G.S. section 25–9–313(4)(d). In es-

sence, Blazer argues that the automatic perfection as consumer goods remains valid against a judgment lien creditor even though the goods become fixtures.

A purchase money security interest in consumer goods may be perfected without filing a financing statement; however, a fixture filing is necessary to achieve priority over conflicting interests in fixtures. N.C.G.S. section 25–9–302(1)(d) provides that "a fixture filing is required for priority over conflicting interests in fixtures to the extent provided in N.C.G.S. section 25–9–313." The rules concerning priorities for conflicting security interests in fixtures are provided by N.C.G.S. section 25–9–313.

If the windows and gutters were consumer goods, Blazer's security interest would be perfected as a purchase money security interest which does not require filing of a financing statement. Once the goods become fixtures, Blazer has a problem regarding perfection of this interest. Blazer did not file a UCC Financing Statement for said fixtures, as required by N.C. G.S. section 25–9–302(1)(d). Therefore, Blazer's security interest in the windows and gutters as fixtures was not perfected.

Blazer argues that the automatic perfection in consumer goods for a purchase money security interest should continue even though the goods later became fixtures. Blazer relied on the language of N.C.G.S. section 25–9–313(4)(d) that a "perfected security interest in fixtures" had priority over conflicting interests which were liens arising "after the security interest was perfected by any method permitted by this article." Specifically, Blazer relied on R. Lord and C. Lewis, *North Carolina Security Interests,* section 9–5 at 326 (1985), for the proposition that "Section 25–9–313(4)(d) provides that a fixture interest, *perfected by any means,* will prevail over a legal or equitable lien, so long as the lien arose after the security interest was perfected." Blazer also noted that Comment 4(c) to Section 25–9–313(4)(d) supported this view indicating that there is no requirement that the financing statement be filed in the real estate records since a judgment creditor is not a creditor who relies on the real estate records.

There are several problems with this argument. First, the applicability in the present circumstance is somewhat strained since neither Lord and Lewis nor the Comments speak to the present situation in which there was automatic perfection of a purchase money security interest in consumer goods. Both references speak of *filing* a financing statement. In the case at bar, Blazer did not file a financing statement. Second, the statute clearly states that "a perfected security interest in fixtures" has priority against a subsequent lien on the real estate. This seems to indicate that perfection as a fixture is a necessary condition to achieve this priority. The way to achieve perfection in a fixture is through a UCC Financing Statement filed as a fixture filing. Third, the Comments to Section 25–9–313(4)(d) suggest that this section was intended to protect fixture interests against invalidation by the bankruptcy trustee but the Comments speak of a prior filed financing statement and not the automatic perfection of the purchase money security interest. Thus, at a minimum a filing of a financing statement in the chattel records would be necessary to perfect an interest in fixtures against a subsequent lien creditor. Blazer did not file a fixture filing or file a financing statement in the chattel records and thus is unperfected.

The Standing Trustee asserts the position of the hypothetical lien creditor as of the date of filing pursuant to Section 544(a)(1). The Trustee enters as a creditor who extends credit when the case commences and obtains "a judicial lien on all property on which a creditor on a simple contract could have obtained a lien." 11 U.S.C. section 544(a)(1). N.C.G.S. section 25–9–301(3) also provides the Trustee in bankruptcy is a lien creditor as of the day of filing. The lien creditor can achieve priority over an unperfected security interest. N.C.G.S. section 25–9–301. Thus, the Trustee can prevail over Blazer since the goods were fixtures on petition date and a security interest had not been perfected in such.

In conclusion, this Court holds that Blazer did not have a perfected security interest in the windows and gutters as fixtures at the date of petition filing. Therefore, the objection of the trustee to the secured claim of Blazer is allowed. The claim of Blazer shall be allowed in this case as an unsecured claim.

Let an order be entered consistent with this Memorandum Opinion.