In re **GAIN ELECTRONICS CORPORATION, a corporation organized under the laws of the State of Delaware, previously known as Dingle Electronics Corporation, Debtor.**

**Bankruptcy No. 89–00002.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 29, 1990.

Peter R. Sarasohn, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for First Fidelity Bank, N.A., North Jersey.

Warren J. Martin, Jr., Riker, Danzig, Scherer & Hyland, Morristown, N.J., for MDFC Equipment Leasing Corp.

Jonathan Kohn, Rothbard, Rothbard, Kohn & Kellar, Newark, N.J., trustee for Gain Electronics Corp.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

First Fidelity Bank, N.A., North Jersey (hereinafter "FFB") has moved for a declaration of rights in the proceeds of sale of certain assets of the debtor. Movant FFB and respondent MDFC Equipment Leasing Corporation (hereinafter "MDFC") both claim entitlement to said proceeds. There are two issues. The first issue is whether FFB is estopped from claiming such entitlement. If FFB is not estopped, then the second issue is whether or not the assets in question were fixtures or improvements. If they were fixtures or improvements, FFB is entitled to the sale proceeds. If they were not fixtures or improvements, MDFC is entitled to the sale proceeds.[1] This shall constitute the Court's finding of facts and conclusions of law.[2]

---

1. The trustee and the other parties stipulate that any interest of the Gain estate in the proceeds is subordinate to the interest of the first lienholder, whether FFB or MDFC, and that the first lienholder is entitled to the sale proceeds because the amounts due on the claims securing the respective liens exceed the amount of the sale proceeds.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). FFB's motion is technically not the correct method to obtain the relief requested, since Bankruptcy Rule 7001(1) and (9) provide that applications to determine the validity, priority or extent of liens, or for a declaratory judgment regarding such issues, shall be in the form of adversary proceedings. However, MDFC has not raised an objection on that basis,

## I.

Gain Electronics Corporation (hereinafter "Gain" or "debtor") was in the business of manufacturing computer chips. For that purpose it leased premises at 22 Chubb Way, Branchburg, New Jersey from Pivot Realty Company Limited Partnership (hereinafter "Pivot). On January 29, 1986 Pivot entered into an agreement with FFB for a loan of $7.5 million for construction of the subject premises. On January 31, 1986 FFB recorded a mortgage securing the loan in the Somerset County Clerk's Office. The mortgage granted FFB a lien on the subject real property and on:

.... all fixtures affixed to the same, or intended to be and also all equipment and improvements now in, upon or which may hereafter be installed or placed in or upon the same, adopted to or necessary for the complete and comfortable use, enjoyment or occupancy thereof, all of which shall be considered as real estate for all purposes to all persons.

In addition, UCC–1 financing statements were filed with the Somerset County Clerk on January 31, 1986 and with the Secretary of State on February 5, 1986 granting FFB a lien on:

... all items of personal property owned by [Pivot] including, but not limited to ... all other equipment and machinery, tools, appliances, fittings, fixtures and building materials of any kind and whether or not affixed to the realty located at the premises.

Pivot and Gain had entered into their lease on November 27, 1985. Section 2.02 of the lease provided in pertinent part as follows:

Title to all fixtures and improvements installed by Tenant [Gain] and paid for by the Landlord [Pivot] in the course of constructing the Clean Facility [the subject premises] shall become, upon installation, and shall remain the property of the Landlord; title to all other fixtures and improvements installed by Tenant, but not paid for by Landlord, shall remain the property of the Tenant during

the term of this Lease, and shall revert to the Landlord upon the Expiration Date or sooner termination of this Lease except for all semi conductor processing equipment which shall remain the property of the Tenant, removable at any time.

As additional collateral for FFB's construction loan, Pivot assigned all of its rights in the lease to FFB on January 29, 1986. The assignment was recorded in the Somerset County Clerk's Office on January 31, 1986.

As a result of the foregoing, FFB perfected a first lien on all fixtures and improvements on the subject premises.

On July 30, 1987, MDFC leased certain semiconductor processing equipment to Gain for use on the subject premises. As security for its obligations under the lease, Gain gave MDFC a security interest in all of Gain's equipment and proceeds thereof. UCC–1 financing statements perfecting MDFC's security interest in the equipment were filed with the Secretary of State on July 10, 1987. As a result, MDFC obtained a first lien on Gain's equipment.

## II.

Gain filed a petition for relief under chapter 7 of the Bankruptcy Code on January 2, 1989. An involuntary petition was filed against Pivot, and an order for relief was entered on February 23, 1989. Both before and after the bankruptcy petitions, the parties attempted to sell Gain as a going concern to maximize the value received for its assets, but those efforts were unsuccessful. FFB then obtained title to the real property from Pivot's trustee. By order of June 21, 1989 MDFC obtained relief from the automatic stay and abandonment of the Gain estate's interest in the equipment leased by MDFC to enable MDFC to sell it to Boeing and Advantest Corporation (hereinafter "Boeing").

After consummation of that private sale, MDFC and Gain's trustee agreed to sell the remaining collateral which had been ordered abandoned to MDFC, together with other equipment belonging to the estate, at

and there are no genuine issues of material fact. The requirement of an adversary proceeding

shall therefore be relaxed in this case pursuant to Rule 1001.

an auction sale on August 29, 1989. On July 26, 1989 the notice of sale required by Bankruptcy Rule 2002(a)(2) was sent to all of Gain's creditors. FFB received the notice. It provided that any objections to the auction sale had to be filed by August 21, 1989.

On August 25, 1989 FFB moved on one day's notice to MDFC for an order enjoining the auction which was scheduled for two business days thereafter. FFB claimed that it realized belatedly that MDFC proposed to sell three assets which FFB argues are fixtures or improvements: An Onan Amber Energy System Generator Model 150 ("the generator"); a Sullair Vacuum System Model SCSFR 2200–2 s/n 056–8496 ("the vacuum system"); and a Deionized Water System with fiberglass storage tank, RO filter system, ultrafilter system and assorted pumping system ("the water system"). The Court denied FFB's application to enjoin the auction, and instead directed that the proceeds of the sale of the three items in question would be held in escrow by the trustee pending resolution of the issue of entitlement to the proceeds.

At the auction FFB was the high bidder for the vacuum system at $3,500. and the water system at $45,000. A third party was the high bidder for the generator at $10,000. The trustee is holding the aggregate sale proceeds of $58,500 in escrow pending further order of the Court.

### III.

MDFC notes that FFB did not object to MDFC's motion for relief from the automatic stay and abandonment of assets including the disputed items, which was granted by order of June 21, 1989. FFB also failed to file a timely objection to the auction. MDFC argues that those facts bar FFB's claim to the disputed items under principles of equitable estoppel, judicial estoppel and finality of judgments.

MDFC relies primarily on *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3rd Cir.) *cert. denied* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). In *Oneida,* the debtor/plaintiff had breach of contract and tort claims against the secured creditor/defendant. However, the existence of the claims was never disclosed during the bankruptcy case. They were not scheduled as assets. They were not asserted at the time of entry of several orders adjudicating the bank's rights, including orders determining the extent and validity of the bank's lien and the amount of its debt, which was paid in full during the case. The debtor's claims were not disclosed in its plan of reorganization or in the disclosure statement filed in connection with the plan, which the bank voted to accept. Nor was there any mention of the claims in the order confirming the plan. The debtor filed suit against the bank seven months later.

The Court of Appeals for the Third Circuit affirmed the District Court's dismissal of the case. The Court of Appeals held that the debtor violated its duty under Bankruptcy Code § 1125 to disclose the existence of the claims in its disclosure statement. The Court also stated:

We can assume that revealing the potential action may also have impacted upon the bank's decision to enter into the stipulation establishing the extent and validity of its lien against Oneida and to vote for confirmation. The practical effect of a successful prosecution of Oneida's claim would be to require the bank to make restitution of the amount realized on its bankruptcy claim, since Oneida's present action calls into question the bank's right to collect its secured debt. This would also constitute a successful collateral attack on the bankruptcy court's order confirming the reorganization plan. In such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceedings, particularly where, as here, the creditors have reasonably acted in reliance upon the assumed finality and integrity of those adjudications. *County Fuel Company v. Equitable Bank Corporation,* 832 F.2d 290 (4th Cir.1987).

In order to preserve the requisite reliability of disclosure statements and to provide assurances to creditors regarding

the finality of plans which they have voted to approve, we hold that under the facts here present Oneida's failure to announce this claim against a creditor precludes it from litigating the cause of action at this time.

*Id.* at 418.

The Court of Appeals held that Oneida's claims against United Jersey Bank were barred by equitable estoppel for three reasons: first, Oneida breached its duty to disclose the claims in its disclosure statement; second, the bank relied to its detriment on Oneida's failure to disclose the claims at various points in the case; and third, to recognize the claims would constitute a successful collateral attack on the order confirming the plan.

■ Comparison of those factors with this case reveals that *Oneida* was quite different from this case. A creditor with a lien claim has no duty to disclose such claim, or to dispute priorities, on a motion by another creditor to vacate the automatic stay and for abandonment. Vacating the automatic stay means only that the movant can pursue its rights outside of the bankruptcy court. *In re Winslow*, 39 B.R. 869, 871 (Bkrtcy.N.D.Ga.1984). Abandonment means only that the bankruptcy estate has no further property interest in the assets in question. *In re Caron*, 50 B.R. 27, 31–32 (Bkrtcy.N.D.Ga.1984). As FFB correctly notes, granting such relief to one lienholder does not constitute any adjudication of the lien priorities. Hence FFB violated no duty to MDFC by failing to object to MDFC's motion to vacate the stay and for abandonment. Because relief from the automatic stay and abandonment do not constitute an adjudication of the priority of competing liens, FFB's motion is not a collateral attack on the order granting MDFC's motion to vacate the automatic stay and for abandonment.

Most importantly, MDFC has neither alleged nor shown how it relied to its detriment on FFB's failure to assert its claim. Detrimental reliance was one of the primary reasons for the holding in *Oneida*, and it is one of the elements which must be proven to establish the affirmative defense of equitable estoppel. *Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984).

For the same reasons, the doctrine of judicial estoppel does not apply here either. *Oneida* and the other cases which MDFC cites in support of its estoppel arguments are distinguishable.

## IV.

MDFC also argues that FFB's motion essentially seeks to reopen or modify the Court's order of June 21, 1989 granting MDFC relief from the automatic stay and abandonment. MDFC asserts that this motion does not comply with the standards set forth in Bankruptcy Rule 9024, incorporating Federal Rule of Civil Procedure 60(b), and cases thereunder. This argument is without merit for several reasons.

First, the order of June 21, 1989 grants relief from the automatic stay and abandonment of certain equipment listed on Exhibit A to the verified application of Michael D. Platt, Esq. in support of MDFC's motion. The disputed items were not listed on Exhibit A, which apparently contained only the equipment MDFC leased to Gain. The disputed items were instead on Exhibit B, which apparently was other equipment in which MDFC had a security interest. Thus the order of June 21, 1989, which was drafted by MDFC's attorneys, does not deal with the disputed items. FFB cannot be seeking a reopening or modification of an order which didn't address the items in question at all.

Second, the stated purpose of the order is to permit the sale of certain equipment to Boeing, and these items weren't among those sold to Boeing.

Third, as previously stated, vacating the automatic stay and abandonment do not constitute an adjudication of lien priorities, and such adjudication was not put in issue by MDFC's motion. Therefore, even if the order had granted relief as to the disputed items, it would not have disposed of the issue on this motion.

For these reasons, FFB's motion does not seek to reopen or modify the order of

June 21, 1989 and MDFC's opposition on that basis must fail. The Court therefore does not have to address the question of whether FFB's motion would meet the standards of F.R.Civ.P. 60(b).

## V.

The generator, vacuum system and water system in question were installed by Gain during construction of the premises.[3] FFB alleges that they were all "physically bolted and annexed to the premises."[4] MDFC does not dispute that the generator was affixed by bolts to a concrete slab, which the purchaser at the auction cut to remove the generator.[5] MDFC alleges that the motors, tanks and filters for the water system and vacuum system "simply sat on the floor of the warehouse."[6] MDFC admits that those systems also included extensive piping systems. However, MDFC alleges that most of the piping hung from ceiling rafters or ran outside of, rather than within, the walls of the facility.[7]

Bankruptcy Rule 9017 incorporates F.R. Civ.P. 43, subsection (e) of which provides that when a motion is based on facts not appearing of record the court may hear the matter on affidavits of the parties. The details regarding the extent to which the items in question were affixed to the premises were not of record prior to FFB's motion. Hence FFB had an obligation to present affidavits regarding those matters, which it failed to do. MDFC did present such affidavits. The Court therefore finds that the material facts regarding the extent to which the subject items were annexed to the premises are as alleged and admitted by MDFC in the preceding paragraph of this opinion.

As noted in Section I above, FFB had a perfected first lien on Gain's fixtures and improvements, and MDFC had a perfected first lien on Gain's equipment. The parties do not dispute that if the items in question are fixtures or improvements, the sale proceeds belong to FFB, and if the items were equipment, the proceeds belong to MDFC. The dispute is over the correct definitions of fixtures and improvements.

## VI.

N.J.S.A. 12A:9–313(1)(a) states that "[g]oods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law." The Official Comment to this section adds that "... goods integrally incorporated into the real estate are clearly fixtures." [8]

Readily removable factory machines can become fixtures. N.J.S.A. 12A:9–313(4)(c). However, neither N.J.S.A. 12A:9–313 nor any other provision of Title 12A specifies the criteria for determining the point at which goods "become so related to particular real estate that an interest in them arises under real estate law." N.J.S.A. 12A:9–313(8) does provide that a secured creditor who removes fixtures "must reimburse any encumbrancer or owner of the real estate who is not the debtor and who has not otherwise agreed for the cost of repair of any physical injury ...," but there is no guidance in the statute as to the relationship of the question of injury to the definition of fixtures.

Prior to the adoption in 1981 of the present version of N.J.S.A. 12A:9–313, the New Jersey courts had used two alternative tests for determining whether an item was a fixture, the "traditional test" and the "institutional doctrine."

> Under the "traditional test," intention is the dominant factor. A chattel becomes a fixture when the party making the annexation intends a permanent accession to the freehold ... Under the "institutional doctrine," the test is whether the

---

3. FFB memorandum of law dated January 31, 1990, p. 11.

4. Id. p. 19.

5. Affidavit of Mark E. Wendorff dated March 9, 1990, p. 3, ¶ 7.

6. Id., p. 4, ¶ 8.

7. Id.

8. U.C.C. 1972 Official Comment to Section 9–313. NJSA 1990 Cumulative Annual Pocket Part, ¶ 2.

chattel is permanently essential to the completeness of the structure or its use. A chattel is a fixture if its severance from the structure would cause material damage to the structure or "prevent the structure from being used for the purposes for which it was erected or for which it has been adapted." [citations omitted]

*In re Park Corrugated Box Corp.*, 249 F.Supp. 56, 58 (D.N.J.1966).

However, when the present version of N.J.S.A. 12A:9–313 was adopted, it was the intention of the drafters that it would abrogate the institutional doctrine. Official Comment, *supra*, ¶ 9. That was confirmed in *City of Bayonne v. Port Jersey Corporation*, 79 N.J. 367, 376, 399 A.2d 649 (1979). MDFC argues that *City of Bayonne* also implicitly rejects the traditional test of intention as well.

*City of Bayonne* dealt with the question of whether certain giant cranes were real or personal property for purposes of taxation under N.J.S.A. 54:4–1 et seq. or 54:11A–1 et seq. Under N.J.S.A. 54:11A–2(b)(2), goods and chattels are personal property unless they are "so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto." The New Jersey Supreme Court held in *City of Bayonne* as follows:

> We conclude, therefore, that the exclusion of "goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto" appearing in N.J.S.A. 54:11A–2 should, looking solely to the language of the statute, be taken to mean only *those chattels the removal of which will do irreparable or*

> *serious physical injury or damage to the freehold.* [emphasis added]

Id. at 378.

■ Admittedly, *City of Bayonne* interpreted different statutes than N.J.S.A. 12A:9–313. However, the purpose was the same, i.e., determining whether goods had become so affixed to realty as to lose their character as personalty. No reason is apparent from review of the statutes or otherwise for using one test for purposes of taxation and a different test for purposes of competition between private interests. Moreover, the definition in *City of Bayonne* is consistent with the suggestion in the Official Comment to 9:313 that goods are fixtures when they become "integrally incorporated into the real estate." Also, *City of Bayonne* relied heavily on N.J.S.A. 12A:9–313, its legislative history and learned treatises on it to reject the institutional doctrine for purposes of both taxation and article 9, without even suggesting that the distinction between realty and personalty should differ depending upon whether the question arose under Title 54 or Title 12A of the New Jersey statutes. Lastly, having the same test for all purposes serves a salutary public purpose of uniformity and avoidance of confusion. For all of these reasons, the Court concludes that the test for determining whether an item is a fixture is that stated in *City of Bayonne*, i.e., will its removal cause irreparable or serious physical injury or damage to the freehold. For the same reasons, the Court agrees with MDFC that *City of Bayonne* implicitly rejects the subjective traditional test of intention in favor of the objective test of irreparable or serious physical injury or damage.[9]

■ The burden of proof rests upon the party who asserts the affirmative of an

---

9. N.J.S.A. 12A:9–313(8) provides essentially that any secured party who removes collateral from real estate must pay any encumbrancer or owner of the real estate except the debtor for the cost of repair of any physical injury caused by removal. It might be inferred that a fixture is anything the removal of which requires repair to the real estate. However, if that were so, then 9–313(1)(a) could have defined fixtures by referring to subsection (8) instead of to real estate law. Further, such a test would be tantamount to the institutional doctrine which *City of Bayonne* rejects. It follows that the question of whether an item is a "fixture" for purposes of competing claims to such items is irrelevant to the issue under N.J.S.A. 12A:9–313(8). Under that section, the obligation to repair is a condition of the right to remove, regardless of how the item is classified. As N.J.S.A. 12A:9:313(1)(a) states, one must look to real estate law for a definition of fixtures.

issue. 29 Am.Jr.2d Evidence § 127. Since FFB asserts that the items in question are fixtures, it therefore has the burden of proving that they are. FFB has not met that burden. As to the generator, it was bolted down, and was removed by simply cutting the bolts. MDFC alleges, and the Court finds, that "the ends of the bolts can easily be removed or filed down, leaving the premises completely restored and undamaged." [10] The vacuum system and water system present a closer question. However, the motors, tanks and filters simply sit on the floor of the warehouse, and the pipes run outside rather than inside the walls and ceiling. The Court finds that FFB has not met its burden of proving that removal of these items would cause irreparable or serious physical injury or damage to the premises. The Court therefore holds that the subject items were not fixtures.

### VII.

■ As previously noted, FFB has a perfected first lien on improvements as well as fixtures. The term "improvement" is not defined by Title 12A. However, the case of *Parker v. Wulstein*, 48 N.J.Eq. 94, 96, 21 A. 623 (Ch. 1891), states:

The word "improvement" may be said to comprehend everything that tends to add to the value or convenience of a building or a place of business, whether it be a store, manufacturing establishment, warehouse or farming premises. It certainly includes repairs of every description. It necessarily includes much more than the term "fixtures." Indeed, so far as I am able to understand, it is difficult to conceive any additions made to a building by a tenant for his own convenience in the conduct of the business which may not properly be included in the term "improvements."

*Parker v. Wulstein* was followed in *In re Herold*, 57 F.Supp. 359 (D.N.J.1943), aff'd, 145 F.2d 236 (3rd Cir.1944). In *He-*

rold, the debtor was a tenant under a lease that had the following clause:

That no alterations, additions or improvements shall be made in or to the premises without the consent of the Landlord in writing, under penalty of damages and forfeiture, and all additions and improvements made by the Tenant shall belong to the Landlord.

*Id.* at 360. There was a dispute over whether a lighting system which had been installed by the tenant/debtor was property of the debtor or the landlord. The court held:

[the above] clause is clearly determinative of the rights of the parties, and it is unnecessary to resort, as did the referee, to the law of fixtures to ascertain the meaning of its unequivocal language.... The lighting system, of which the lighting fixtures were an integral part, was an "improvement" within the meaning of the lease, and became the property of the Petitioner (the landlord) upon its installation. [citations omitted]

*Id.*

MDFC relies on *Altman v. Anderson*, 151 Ariz. 209, 726 P.2d 625 (Ariz.App.1986), which has a different view:

We think the best approach, at least under the facts before us, is to recognize that the word "improvement" has no definite and fixed meaning, that it is a relative and comprehensive term whose meaning in a particular case must be ascertained from the context and the subject matter of the instrument in which it is used.

This Court holds that the term "improvement" has the meaning stated in *Parker v. Wulstein*, for three reasons. First, *Parker v. Wulstein* is a New Jersey case. Second, the definition in *Parker v. Wulstein* is close to the dictionary definition of the term.[11] Third, it is an objective test. To the extent that *Altman v. Anderson* ex-

---

**10.** Affidavit of Mark E. Wendorff, *supra*, pp. 7–8.

**11.** Black's Law Dictionary (5th Ed.) defines "improvement" in pertinent part as follows:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacements, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

presses a different view, this Court declines to follow it.

Since the items in question were additions made by Gain to the building in the conduct of its business which tended to add to the value or convenience of the building to Gain, the Court holds that they were improvements.[12] FFB therefore is entitled to the sale proceeds.[13]

## CONCLUSION

To summarize, the Court holds the following:

1. The doctrines of equitable estoppel and judicial estoppel do not bar FFB's claim.

2. FFB has not sought to modify or reopen the Court's order of June 21, 1989.

3. The items in question are not fixtures.

4. The items in question are improvements.

5. FFB is entitled to the proceeds of sale.

6. Any arguments raised by the parties and not addressed above have been considered and determined to be without merit.

FFB is to submit an order consistent with this opinion under the five-day rule.

---

12. Even if the test was the intent of the parties, review of the contractual provisions referred to in section I above would still lead to the conclusion that the items in question were improvements.

13. The question of apportionment of costs of sale was not raised on this motion. However, I see no reason why these sale proceeds should not bear their proportionate share of such costs.