In re Michael D. LIPKE, Debtor.

BENCHARGE CREDIT
SERVICE, Plaintiff,

v.

Michael D. LIPKE, Defendant.

Bankruptcy No. 90–10731.
Adv. No. 90–1127.

United States Bankruptcy Court,
D. Rhode Island.

Feb. 8, 1991.

---

Christopher Lefebvre, Pawtucket, R.I., for debtor/defendant.

Paul M. Giacobbe, Warwick, R.I., for plaintiff.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on September 27, 1990, on the complaint of Bencharge Credit Service to exempt from discharge a debt of the Chapter 7 Debtor, Michael D. Lipke, for the purchase of various building materials.[1] After consideration of applicable case and statutory law, it is our conclusion that the debt of $4,923.77 to Bencharge Credit Service, as the Debtor has correctly listed it on his A–3 Schedule of unsecured claims, is neither secured nor exempt from discharge.

## UNDISPUTED FACTS

Between April and August, 1989, Michael Lipke made a series of purchases of building materials at Brewsters Lumberyard, charging them to his Bencharge Credit Service Account, and pursuant to his credit agreement, Lipke granted Bencharge a purchase money security interest in the materials purchased.[2] The items, which in-

---

1. Although the plaintiff's complaint is styled as one to determine "dischargeability of debt," the arguments, as well as the Preconference Statement submitted by the plaintiff indicate that the dispositive question is whether Bencharge has preserved its security interest in building materials purchased by Lipke from Brewsters Lumberyard, and subsequently incorporated into real estate.

2. The Bencharge sales slips which were signed by the Debtor each contained the following recital:

> Buyer acknowledges receipt of the goods and/or services shown above. If the Bencharge Agreement provides for a security interest, Buyer grants the merchant a purchase money security interest in the goods purchased. Buyer promises to pay the TOTAL plus any charges due according to the Bencharge Agreement. Bencharge is authorized to

cluded lumber, sheet rock, electrical equipment, insulation, and roofing material were all used in the construction of Lipke's house. The Chapter 7 petition was filed on May 16, 1990, after which the Debtor reaffirmed the first and second mortgages on his home.

## ISSUE

At issue, and as a matter of first impression, we think, in this jurisdiction, is whether the creditor, on the present facts, has preserved its purchase money security interest in building materials which have been incorporated into the realty.

## DISCUSSION

■ By the terms of the Bencharge Agreement, as well as 11 U.S.C. § 522, Rhode Island law applies to this transaction. R.I.GEN.LAWS § 6A–9–313(1) (1985) provides that:

(a) Goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law.

(b) A "Fixture Filing" is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and which conforms to the requirements of subsection (5) of § 6A–9–402.

*Id.* (emphasis added). The statutory definition of a fixture would include the materials purchased through the Bencharge Account if, as was the case here, the materials are "integrally incorporated into the real estate." R.I.GEN.LAWS § 6A–9–313 comment 2.[3] Traditionally, intent has been a controlling factor in the determination of fixture status. *See In re Gain Electronics Corp.*, 117 B.R. 805, 810–11 (Bankr.D.N.J. 1990); *In re Park Corrugated Box Corp.*, 249 F.Supp. 56, 58 (D.N.J.1966). It was reasonable to expect, and Bencharge does not contend otherwise, that Lipke intended to use the personal property in question in the construction of his house. In any event, that is precisely what was done.

If the goods have indeed become part of the realty, then (it would seem) a fixture filing would be necessary to preserve a security interest therein. §§ 6A–9–313(1)(b), 6A–9–313(4), 6A–9–302(1)(d), and 6A–9–402. "[W]hen a filing is intended to give the priority advantages herein discussed against real estate interests, the filing must … be for record in the real estate records and indexed therein." § 6A–9–313 comment 1. Bencharge has not made such a filing.

■ Additionally, however, and even in Bencharge had accomplished a fixture filing, § 6A–9–313(2) clearly provides that "[a] security interest under this chapter may be created in goods which are fixtures or may continue in goods which become fixtures, but *no security interest exists under this chapter in ordinary building materials incorporated into an improvement on land.*" (emphasis added). Therefore "ordinary building materials," once incorporated into real estate, may be fixtures for purposes of state law, but cannot be the subject of a security interest. *See Zenor, Fixtures Financing*, 505 *Prac.L.Inst.*, 429 (July 1, 1989). Bencharge does not suggest that these goods are anything other than "ordinary building materials," and

---

pay the amount shown as TOTAL upon proper presentation. The "Bencharge Agreement" provides that "you grant us a purchase money security interest in the goods purchased on your Account.... We waive any other security interests or liens which may arise by operation of law or by any other agreement with us, except any judgment lien … if this Agreement is not paid in accordance with its terms." Rhode Island law governs the Agreement.

**3.** The 1962 Official text of the Uniform Commercial Code contains a similar exclusion for building materials. "The rules of this section do not apply to goods incorporated into a structure in the manner of lumber, bricks, tile, cement, glass, metal work and the like and no security interest in them exists under this Article unless the structure remains personal property under applicable law." U.C.C. § 9–313(1) (1962). Cases decided under that provision reinforce the plain meaning of the subsection and that of the current provisions. *See In re Park Corrugated Box Corp.*, 249 F.Supp. 56 (D.N.J.1966); *House v. Long*, 244 Ark. 718, 426 S.W.2d 814 (1968).

we would be hard pressed to define them otherwise.

Although there are exceptions (to the exclusion) which hold that while "[g]oods may be technically 'ordinary building materials,'" if they are incorporated into a structure which "as a whole has not become an integral part of the real estate" then the governing rules are those applicable to the structure itself. *Id.* The comments to this section point out that the exception to the exclusion is relevant only where the permanence of the structure is somewhat less than fixed, such as a mobile home. *Id.* In the instant case, there is no indication that Lipke's house is not a permanent structure. Because of this, and because the materials were incorporated into the building, the plain language of R.I.GEN.LAWS § 6A-9-313(2) precludes the continued validity of an otherwise perfected security interest in ordinary building materials.

■ Notwithstanding all of the foregoing, Bencharge also argues the effect of § 6A-9-107, which defines a purchase money security interest as one,

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Under the credit agreement between Bencharge and Lipke, a purchase money security interest was intended to be, and was in fact created in the goods financed through the customer's account. However, that alone is not dispositive, on the facts before us. Notwithstanding § 6A-9-313(4) which provides that a perfected security interest in fixtures has priority over the conflicting interest of the encumbrancer or owner of the real estate where a purchase money security interest attaches before the goods become fixtures (or within ten days thereafter), or where the security interest is perfected by a fixture filing before the competing interest of the encumbrancer or owner is of record, the Statute also provides: *"no security interest exists … in ordinary building materials incorporated into an improvement on land."* § 6A-9-313(2) (emphasis added).

Bencharge also asks the Court to consider *In re Hinson,* 77 B.R. 34 (Bankr.M.D.N.C.1987), a Chapter 13 case, in support of its contention that "a debtor cannot defeat a security interest by simply incorporating fixtures into his own real estate." Plaintiff's Memorandum at 3. We find that a fair reading of *Hinson* does not lead to the conclusion suggested by Bencharge. Rather, in a factual setting not unlike the instant case, the *Hinson* court, applying North Carolina law, held that a building material supplier's failure to effect a fixture filing on windows and gutters installed on the debtor's home was fatal to its secured status in those goods, once they became incorporated into the structure. *Hinson,* 77 B.R. at 37. The court ruled that the supplier's claim would be allowed as an *unsecured* claim. *Id.* at 38.

■ Bencharge also requests the Court to consider § 6A-9-313(5) which provides:

(5) A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where

(a) The *encumbrancer or owner has consented in writing to the security interest* or has disclaimed an interest in the goods as fixtures;

*Id.* (emphasis added). This section merely permits parties to alter the priority scheme outlined in the code, where the agreement to do so is in writing. *See* Zenor, *supra.* "Regardless of whether the secured party has or has not perfected, the Code permits him and the owner or encumbrancer to enter into a subordination agreement in which the parties themselves may establish the order of priority." Squillante, *The Law of Fixtures: Common Law and the Uniform Commercial Code,* 15 HOFSTRA L.REV. 535, 574 (1987). This section has no application to the instant dispute, since there is no assertion as to the existence of

a subordination agreement.[4]

■ Finally, Bencharge argues that 11 U.S.C. § 523(a)(2)(B) creates a duty to "safeguard the secured property" and/or a "promise[ ] to the creditor that the goods he was purchasing were for his own use." Section 523(a)(2)(B) exempts from discharge any debt,

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> . . . .
>
> (B) use of a statement in writing—
>
>> (i) that is materially false;
>>
>> (ii) respecting the debtor's or an insider's financial condition;
>>
>> (iii) on which the creditor ... reasonably relied; and
>>
>> (iv) that the debtor caused to be made or published with intent to deceive;
>>
>> . . .

The terms of this subsection clearly are intended to be read conjunctively. Reliance on a written statement is only one of several necessary elements. The statement must also be materially false, must relate to the debtor's financial condition, and must have been made with intent to deceive. There are no facts, or even allegations to support the elements of this type of discharge exemption, and we are puzzled as to the proffered application of this section to the case at bar.

For all of the reasons discussed above, we conclude that no security interest exists in the building materials purchased by the debtor from Brewsters and incorporated into Debtor's home. The debt to Bencharge is allowed as an unsecured claim.

Enter Judgment consistent with this opinion.

---

**4.** This section allows for parties to alter the priority scheme, not where the security agreement is in writing, but where the agreement to do so is in writing.