**In re Robert Gilbert WALKER and Beverly Rae Walker, Debtors.**

**Bankruptcy No. 94–50369C–7W.**

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

Nov. 10, 1994.

Phillip E. Bolton, Greensboro, NC, for debtor.

Marion G. Follin, Greensboro, NC, for creditor.

Catharine R. Carruthers, Trustee.

## ORDER

WILLIAM L. STOCKS, Bankruptcy Judge.

Before the court is a motion filed by Robert and Beverly Walker seeking to redeem personal property pursuant to 11 U.S.C. § 722. The secured party, Beneficial North Carolina Inc., d/b/a Bencharge ("Bencharge"), objected to the motion. Having considered the motion, the objection and the evidence offered by the parties and having heard the arguments of counsel, the court concludes that the motion should be granted for the reasons cited herein.

### FINDINGS OF FACT

The facts are not in dispute. On August 13, 1993, Robert and Beverly Walker contracted with Cardinal Awning Company for the purchase and installation of vinyl siding and trim on their home located in Davidson County, North Carolina. The contract provided for a contract price of $4,368.00 and included a provision granting the seller a purchase money security interest in the goods being purchased. Bencharge, the successor in interest to Cardinal Awning, subsequently filed a U.C.C. financing statement in Davidson County in which it identified the collateral as "vinyl siding and trim" and checked the box on the financing statement indicating that it was a fixture filing.

The Walkers filed a voluntary Chapter 7 petition on April 29, 1994. Bencharge filed a proof of claim on May 6, 1994, asserting a secured claim covering "goods sold" in the amount of $5,514.76. The proof of claim describes the collateral as a "purchase money security interest in vinyl siding." The box used to indicate a security interest in real property was left blank on the proof of claim.

The debtors received a discharge in their Chapter 7 case on August 9, 1994. The trustee abandoned any interest in the vinyl siding and trim on August 15, 1994. Both parties briefed their positions and on August 31, 1994, there was a hearing before this court at which the court received evidence and the parties argued their respective positions. Each party provided specific evidence supporting their positions regarding how the siding should be valued. Bencharge present-

ed expert testimony indicating that the addition of the vinyl siding and trim to the Walkers' residence added $3,750.00 to the fair market value of their residence. The Walkers presented evidence, which was not contradicted, that the resale value of the siding and trim if it were removed would be $150.00.

### CONCLUSIONS OF LAW

11 U.S.C. § 722 provides that an individual debtor may redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if the property has been exempted under § 522 or abandoned under § 554, by paying the holder of the lien the amount of the allowed secured claim that is secured by the lien. In this case, there is no exemption issue because the trustee has abandoned the siding pursuant to § 554. The parties do not dispute that Bencharge has a valid security interest in the siding and trim. They also acknowledge that the indebtedness held by Bencharge is a dischargeable consumer debt. The dispute revolves around the question of whether the vinyl siding and trim are tangible personal property for the purposes of the motion to redeem and, if so, the amount of the allowed secured claim that the debtors must pay Bencharge to redeem the property.

#### 1. Tangible personal property.

■ Bencharge claims that its collateral cannot be redeemed because the siding is a fixture and not tangible personal property that may be redeemed under § 722. The debtors, on the other hand, contend that the siding and trim constitute tangible personal property that qualifies for redemption under the Code.

There is no definition of "tangible personal property" in the Bankruptcy Code. Bencharge contends that the siding, which admittedly was sold as "goods," is no longer personal property but has become a fixture which cannot be redeemed. In support of this position, Bencharge points out that under North Carolina law, tangible personal property becomes a fixture upon real estate

when it becomes so related to particular real estate that an interest in it arises under real estate law. N.C.G.S. § 25–9–313(1)(a). Bencharge argues that if the siding became a fixture, it should be regarded as part of the real estate and hence is not personal property that can be redeemed pursuant to § 722.

The issue regarding the status of this siding as personalty or as a fixture attached to real property requires an examination of the law related to fixtures. In general, the purpose of a fixture filing is to perfect the security interest of the secured creditor in property that is attached to real property not owned by the debtor or which is subject to liens or security interests of other parties. By recording a valid fixture filing, Bencharge established its priority in the siding as related to third parties already secured by existing deeds of trust or those who might acquire a deed of trust following the filing by Bencharge. However, Bencharge's secured position in relation to the Walkers was already established through the purchase money security interest the company obtained at the time of sale.

■ While the siding may be so related to the real estate that it became a fixture under state law, that does not prevent the siding from retaining its status as personal property for purposes of the debtors' motion pursuant to § 722.

"[T]he status of an item as realty or personalty may depend on the relation of the parties claiming an interest in the item to each other and to the land, as this relation is often indicative of the reasonably presumable intention of the annexor at the time he made the annexation. That is, the same item that may be considered personal property in one situation may be considered real property where a different relationship exists."

*Hughes v. Young,* 115 N.C.App. 325, 328, 444 S.E.2d 248 (1994), citing Hetrick and McLaughlin, *Webster's Real Estate Law in North Carolina,* § 16 (3rd Ed.1988). Between the parties in this controversy, the law of fixtures and requirements for fixture filings are immaterial because there are no third parties involved and the collateral is already subject to a valid, consensual, purchase-money lien.[1] The determinative question, then, is whether the siding is personal property as between the debtors and Bencharge.

■ The basic test for determining whether a chattel is real or personal property is the intention of the parties with regard to the annexation. *In re Hinson,* 77 B.R. 34, 36 (Bankr.M.D.N.C.1987); *Little v. National Services Industries, Inc.,* 79 N.C.App. 688, 692–693, 340 S.E.2d 510, 513 (1986). The North Carolina Court of Appeals recently described the precise situation at issue in the present case: "[W]here the parties involved are the seller of a chattel and the purchaser of that chattel who gives the seller a security interest in the chattel and then affixes the chattel to real property, the item remains personalty as between the parties." *Hughes v. Young,* 115 N.C.App. at 328–29, 444 S.E.2d 248. The facts in this case support the proposition that the siding was intended to be personalty and remained personalty as between the debtors and Bencharge. The nature of this transaction was the sale of goods. Bencharge's interest in this siding derives from a purchase money security interest in a chattel purchased from its predecessor in interest; Bencharge has no rights in the real property.[2] If Bencharge had intended for the debt to be secured by the real property, it could and should have obtained a deed of trust. N.C.G.S. § 25–9–313(3) ("This article does not prevent creation of an encumbrance upon fixtures pursuant to real estate law").

1. As previously noted, the trustee has abandoned any interest of the estate in the siding and trim. Compare *In re Hinson,* 77 B.R. 34 (Bankr. M.D.N.C.1987), where the Chapter 13 Standing Trustee exercised her powers as a hypothetical lien creditor to defeat the interest of a creditor claiming a security interest in vinyl siding who had not made a fixture filing.

2. If, under state law, the siding is considered to be a fixture, Bencharge could remove its collateral from the real estate upon default of the debtor. If the owner of the real property was someone other than the debtor or there was an existing deed of trust, Bencharge would be required to reimburse the cost of any repair or physical injury to the real estate caused by the removal of the siding. N.C.G.S. § 25–9–313(8).

In the sales contract and in its proof of claim, Bencharge claimed a purchase money security interest in *goods*. Filing a fixture filing in addition to the purchase money security interest is not determinative regarding the nature of the collateral; it is routinely done by creditors and often is merely precautionary. See N.C.G.S. § 25–9–313, Amended Official Comment 1. Even with the fixture filing, Bencharge's sole security is a lien upon the siding and its sole remedy is to repossess the siding after severing it from the real property to which it is attached. See N.C.G.S. § 25–9–313(8) and § 25–9–504. This does not amount to a security interest in realty since Bencharge did not bargain for nor receive any right to have the realty sold.

■ The Walkers are correct in their assertion that the siding is tangible personal property intended primarily for personal, family or household use. The siding clearly serves a family and household purpose. See *In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988) ("It is difficult to conceive of any expenditure that serves 'family ... or household purpose' more directly than does the purchase of a home and making improvements thereon.") Bencharge has a claim secured by goods which are the possession of the Walkers. These goods—the siding and trim—are tangible personal property intended primarily for personal, family or household use and therefore may be redeemed pursuant to § 722.

### 2. *Amount of the allowed secured claim.*

■ The final issue to be resolved is the amount of the allowed secured claim which the debtors must pay in order to redeem the siding. Under 11 U.S.C. § 506(a), when the value of a secured creditor's interest is being determined, "such value must be determined in light of the purpose of the valuation and of the proposed disposition or use of the property." In the present case the valuation is being done for purposes of redemption under § 722. In determining how the valuation should be accomplished for that purpose it is helpful to look at the intent and purpose of § 722. The legislative history of § 722 reveals that the legislative intent was for redemption to provide a "right of first refusal"

for the debtor to purchase consumer goods that might otherwise be repossessed. *Collier on Bankruptcy*, 15th Ed. ¶ 722.01; *In re Cruseturner*, 8 B.R. 581, 586–87 (Bankr.D. Utah 1981) (discussing the legislative history and the debtor's "right of first refusal"). Redemption thus allows the debtor to retain his or her property and avoid the high replacement cost that might be required if the secured creditor repossessed. *Collier*, *supra* at ¶ 722.01. At the same time, the secured creditor receives what it bargained for because the secured creditor must be paid what it would have received if it had fully exercised its security rights by repossessing and selling the collateral. *See In re Pierce*, 5 B.R. 346, 347 (Bankr.D.Neb.1980). Under § 722, the debtor may redeem the collateral by paying the creditor the full amount of the indebtedness or the value of the collateral, whichever is less. *In re Edwards*, 901 F.2d 1383, 1385 (7th Cir.1990); *In re Cruseturner*, *supra*; ("Section 722 gives the debtor the right to redeem by payment of the amount of the allowed secured claim, or the market value of the property, which may often be significantly less than the amount due.").

■ Considering the intent and purpose of § 722, the manner in which the amount of Bencharge's secured claim should be determined is to focus upon what Bencharge would realize if it were permitted to exercise its rights fully and sell the siding and trim. If Bencharge were permitted to exercise its rights, it is clear that Bencharge would first have to remove the siding and trim from the house. This is true because Bencharge does not have the right to sell the house and therefore could sell the siding only after removing it. It follows that Bencharge is not entitled to have the siding valued while it is in place on the house. Further, the fact that the siding increases the value of the house as a whole has no bearing upon what Bencharge would receive if it foreclosed on its collateral (i.e., the siding and trim alone), and therefore is no indication of the value of Bencharge's secured claim. The undisputed evidence is that once removed from the house the siding and trim have a fair market value not ex-

ceeding $150.00[3]. The bottom line is that Bencharge has a secured claim for which it is entitled to be paid $150.00, with the balance of its claim being an unsecured claim. The debtors are entitled to redeem the siding and trim by paying $150.00 which is the amount of the allowed secured claim held by Bencharge.[4] This result is consistent with the legislative intent underlying § 722 and also assures that Bencharge will receive the same amount for its secured claim as it would have received if the bankruptcy case had never been filed and it had fully exercised its security rights upon default by the Walkers.

It is so ordered.

This the 22 day of September, 1994.

**3.** It is not clear whether this figure was arrived at by reducing the resale value of the siding by the cost of removing and selling the siding and trim. However, since no issue was raised regarding that question the court has not attempted to address that question.

**4.** The creditor is entitled to a lump sum payment. Permitting installment payments would be unfair to creditors in Chapter 7 cases as it could result in an unwarranted dilution of their position and is not supported by the legislative history. *In re Bell,* 700 F.2d 1053, 1055–57 (6th Cir.1983).